UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ASHLEY TORRES,

          Plaintiff,

      v.                                                      Case No. 20-C-1033

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

          Defendant.

## DECISION AND ORDER REVERSING THE COMMISSIONER'S DECISION

Plaintiff Ashley Torres filed this action for judicial review of a decision by the Commissioner of Social Security denying her application for supplemental security income under Title XVI of the Social Security Act. Torres contends that decision of the Administrative Law Judge (ALJ) is flawed and should be reversed for a number of reasons. For the reasons that follow, the Commissioner's decision will be reversed and remanded for further proceedings.

## BACKGROUND

Torres filed her application for supplemental security income on October 5, 2018, alleging disability beginning July 1, 2018. R. 13. She listed schizophrenia, bipolar, depression, and anxiety as the conditions limiting her ability to work. R. 204. After her claim was denied initially and upon reconsideration, she requested a hearing before an ALJ. On February 4, 2020, ALJ Guila Parker held a hearing at which Torres, who was represented by counsel, and a vocational expert testified. R. 31–57.

At the time of the hearing, Torres was 21 years old and lived in a house with her boyfriend and his mother. R. 36. She had completed ninth grade and had no plans to obtain a GED. R. 35.

Torres had worked at McDonald's as a teenager. R. 39. More recently, she worked as an assembly worker and then as a part-time housekeeper at a Holiday Inn. R. 40–41. Those jobs did not last because she was constantly fighting with people, including her manager, and she missed a lot of work due to emotional problems. *Id.* She stated that, when she feels up to it, she babysits her boyfriend's sister's children, ages one through five, for an hour or two at a time. R. 37.

Torres testified that she had emotional problems since she was little but began treatment for them in 2018. R. 43. She stated that she cries a lot and had previously attempted suicide. R. 44. She testified that she gets angry and physical with herself and others in her house, and she has hurt herself by kicking and slamming her head against the wall. R. 42. In the past, she has engaged in cutting behaviors. Although she has the urge to engage in that behavior every other day, she had not done so for about four months at the time of the hearing. *Id.* Torres takes a variety of medications, including Wellbutrin, Abilify, Mirtazapine, and prazosin, to treat her depression, panic attacks, sleeplessness, and nightmares. R. 43–44. She testified that the medications made her drowsy. R. 43.

In a typical day, Torres wakes up, takes her medicine, and watches television. R. 37. She stated that she occasionally cleans, doing chores such as laundry or the dishes. R. 48. Torres testified that she does not help with cleaning when she is depressed and angry. R. 38. She estimated she showers "maybe five to seven times a month" and does not really care about her hygiene. R. 44. She indicated that she does not have a driver's license and does not drive because she is afraid to go out in public. R. 38. Torres described her inability to leave the house alone or to take a bus because of "really bad anxiety." R. 45. She does not socialize and had not left the house alone in over a year. R. 49. She also testified that she sometimes hears voices telling her

2

negative things and that she sees or feels people near her that are not there. R. 46. Torres described her ability to focus and concentrate as "bad." R. 48.

Torres testified that she previously used marijuana almost every day. R. 47. When asked about her medication compliance, Torres testified that, if she stopped taking medications, it was either due to insurance issues or because she was feeling hopeless. R. 50. She explained that her therapy and visits have helped "a little bit but not 100%" because she does not like how drowsy the medications make her feel. *Id.* She noted that her providers are still trying to figure out her medications. R. 51.

In a fourteen-page decision dated February 19, 2020, the ALJ concluded Torres was not disabled. R. 13–26. Following the Social Security Administration's (SSA) five-step sequential evaluation process for determining disability, the ALJ determined that Torres had not engaged in substantial gainful activity since her application date of October 5, 2018. R. 15. The ALJ determined that Torres had the following severe impairments: bipolar disorder with psychotic features; post-traumatic stress disorder (PTSD); personality disorder; and cannabis use disorder. R. 16. The ALJ determined Torres' scoliosis, cyst, and laceration to her forehead were non-severe impairments that either did not limit her ability to work or meet the 12-month durational requirement. *Id.* The ALJ found that Torres did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 17.

The ALJ then assessed Torres' residual functional capacity (RFC), finding that:

[T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is able to understand, remember, and carry out simple instructions with a reasoning development level no greater than 03. She can maintain concentration, persistence, and pace for two-hour intervals over an 8-hour day with routine breaks. The claimant can work in a low stress job, defined as one that requires only occasional

3

work-related decisions and involves only occasional changes in the work setting. She can perform work that does not impose fast-paced production quotas. The claimant is occasionally able to interact with supervisors and co-workers, but should not be required to perform tandem tasks that require coordination with co-workers. She is able to work in proximity to the public, but can have only brief interaction with the public.

R. 19. The ALJ determined that Torres had no past relevant work. R. 24. She concluded that, considering her age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Torres can perform, including dishwasher, order picker, and cleaner. R. 25. Based on that finding, the ALJ concluded that Torres had not been disabled since October 5, 2018, her application date. *Id.* The Appeals Council denied Torres' request for review of the ALJ's decision, making that decision the final decision of the Commissioner of Social Security in her case. R. 1.

## LEGAL STANDARD

The Commissioner's final decision will be upheld "if the ALJ applied the correct legal standards and supported [his] decision with substantial evidence." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) (citing 42 U.S.C. § 405(g); *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010); *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009)). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811 (citing *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009)). The ALJ "must build an accurate and logical bridge from the evidence to [her] conclusion[s]." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (citing *Green v. Apfel*, 204 F.3d 780, 781 (7th Cir. 2000); *Groves v. Apfel*, 148 F.3d 809, 811 (7th Cir. 1998)).

The ALJ is also expected to follow the SSA's rulings and regulations. Failure to do so, unless the error is harmless, requires reversal. *See Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court "does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

**ANALYSIS**

Torres raises numerous challenges to the ALJ's decision, but the Court finds that only one need be addressed since it is enough, by itself, to require a remand. Torres asserts that the ALJ erred in considering her non-compliant treatment without considering the reasons for it. While an ALJ can consider a claimant's non-compliance with treatment in evaluating credibility, the Seventh Circuit has held that an ALJ must not draw any inferences about a claimant's condition from her non-compliance unless the ALJ explored the claimant's explanations for the non-compliance. *See Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008); *see also* SSR 16-3p ("We will not find an individual's symptoms inconsistent with the evidence in the record . . . without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints. . . . We will explain how we considered the individual's reasons in our evaluation of the individual's symptoms.").

The Commissioner contends that the ALJ was not required to explore Torres' reasons for non-compliance because she did not draw a negative inference about the severity of Torres' condition from instances of non-compliance. While the ALJ observed that treatment compliance

5

has been inconsistent and "provides some context for the claimant's in-patient psychiatric hospitalizations," R. 21, she also noted that Torres' mental symptoms were stable during periods of consistent treatment and found the opinions of treatment providers unpersuasive because they did not mention the periods of Torres' treatment non-compliance. R. 20, 24. The ALJ concluded, "The overall evidence supports the claimant's ability to perform a reduced range of unskilled work. Although the claimant has multiple mental impairments, her mental functioning remained stable with treatment that included occasional medication modifications to find an effective regimen. Episodes of increasing symptoms often corresponded to situational stressors or diminished commitment to treatment recommendations." R. 22.

Given the ALJ's emphasis on Torres' non-compliance with treatment, the ALJ should have evaluated Torres' reasons for non-compliance. Although the ALJ asked Torres about her noncompliance at the administrative hearing, and Torres responded that she stops taking her medications for "insurance reasons or I didn't care if I lived or died or how I felt that day," R. 49, the ALJ did not discuss why she rejected Torres' reasons for failing to comply with treatment. The ALJ's error is not harmless because a discussion of the factors related to Torres' non-compliance with treatment may have impacted the ALJ's credibility determination, as well as her RFC determination. As Torres points out, failure to comply with treatment is often a result of the very impairment the treatment is intended to remedy. *See Martinez v. Astrue*, 630 F.3d 693, 697 (7th Cir. 2011) ("The administrative law judge found that Martinez's severe depression is well controlled by drugs—when she takes them—but ignored the fact that during manic spells Martinez had stopped taking her medications (a common consequence of mania)."); *Spiva v. Astrue*, 628 F.3d 346, 351 (7th Cir. 2010) ("The administrative law judge's reference to Spiva's failing to take his medications ignores one of the most serious problems in the treatment of mental illness—the

6

difficulty of keeping patients on their medications."); *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) ("The fact that a psychiatric patient does not follow through on counseling or take antipsychotic drugs regularly is a common consequence of being psychotic and is especially to be expected of a person with a very low IQ."). In failing to inquire into and address the reasons for her noncompliance, the ALJ violated SSR 16-3p. Accordingly, remand is warranted in this case.

## CONCLUSION

For the reasons above, the Commissioner's decision is **REVERSED** and **REMANDED** to the Agency pursuant to 42 U.S.C. § 405(g) (sentence four). Although the decision is reversed because of the error in failing to sufficiently discuss the reasons for Torres' non-compliance with treatment, the Commissioner should also address Torres' other claimed errors, that the ALJ erred in evaluating the medical opinions of Valynda Wells, Ph.D., and APNP N. Kroner; that the ALJ's conclusion that Torres' symptoms were not entirely consistent with the record is unsupported by substantial evidence; and that the ALJ's RFC assessment does not adequately account for Torres' social deficits or variable functioning. Further consideration of these claimed errors on remand will aid in reaching the final resolution of the case and avoid further remands in the future. The Clerk is directed to enter judgment forthwith.

**SO ORDERED** at Green Bay, Wisconsin this 21st day of March, 2022.

s/ William C. Griesbach
William C. Griesbach
United States District Judge
